ALBERT L. DEXTER, RELATOR, v. BOARD OF COMMIS-
SIONERS OF PILOTAGE OF NEW JERSEY.

Submitted July 3, 1903—Decided February 23, 1904.

1. Under the act regulating pilots, approved April 17th, 1846, as amended by supplements approved May 17th, 1894 (*Pamph. L., p.* 432; *Gen. Stat., p.* 2471), and March 7th, 1898 (*Pamph. L., p.* 53), a person who has served two years as a *deputy* pilot, and who thereupon applies for license as a full branch pilot, must fulfill two tests to the satisfaction of the commissioners of pilotage, acting in the exercise of their discretion, viz., (1) an educational test, especially as to his knowledge of tides, soundings, &c., as prescribed by section 4 of the act of 1846 (*Gen. Stat., p.* 2463), and (2) a test respecting his mental, moral and physical qualifications, to be determined by the commissioners after making "such inquiries respecting him and his qualifications as to them shall appear necessary and expedient."

2. The investigation to be made by the commissioners of pilotage respecting the qualifications of an applicant for pilot's license (other than the educational examination) need not be conducted in the presence of the applicant, nor with the formality required in judicial proceedings.

3. If the commissioners have made the "inquiries" indicated by the act, and on the strength of the information thereby acquired have determined in their discretion that the applicant is not a fit person to be licensed as a pilot, he has no right to require them to go through the empty form of an examination concerning his technical knowledge.

---

On demurrer to return to alternative *mandamus.*

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and PITNEY.

For the relator, *Vredenburgh, Wall & Van Winkle.*

For the defendants, *Robert S. Woodruff* and *J. Culbert Palmer* (of the New York bar).

The opinion of the court was delivered by

PITNEY, J. The alternative writ of *mandamus* issued in this cause recites that the relator, prior to February 13th, 1902, had served for two years as a deputy branch pilot by way of Sandy Hook; that on that date he applied to the pilot commissioners to be examined as a full branch pilot and, if found qualified, to be licensed as such; and that the commissioners refused to examine him. The writ requires the commissioners to examine the relator for the position of full branch pilot, and if found qualified to license him as such, or to show cause to the contrary.

The return made by the commissioners (among other averments not necessary to be mentioned) admits that the relator had been licensed as a deputy pilot and had served as such for a period of two years; that he applied to the board of pilot commissioners to examine him and recommend him for license as a full branch pilot if found qualified; "and that said board investigated the general standing and character of the relator, and from the evidence submitted concluded that it would be inexpedient to issue the license in question to the relator even in case such relator had the requisite technical knowledge and could satisfactorily pass an examination, and thereupon refused his application to be examined."

The powers of the commissioners of pilotage are derived from "An act to establish and regulate pilots for the ports of Jersey City, Newark and Perth Amboy by way of Sandy Hook," approved April 17th, 1846, and certain supplements thereto, which are found in the general statutes. *Gen. Stat., p.* 2463 *et seq.* A further supplement was approved March 7th, 1898. *Pamph. L., p.* 53.

By the first section of the original act, after providing for the appointment of commissioners of pilotage by the governor, with the advice and consent of the senate, it was declared that "the commissioners of pilotage, or a majority of them, shall be authorized, and full power and authority are hereby given to them to permit, at their discretion, any person to act as a branch pilot off the bar of Sandy Hook, or of the river Raritan, or of the harbors of Jersey City, Newark or Perth Amboy, they having examined the said person in the manner hereinafter mentioned and made such inquiries respecting him and his qualifications as to them, the said commissioners, or a majority of them, shall appear necessary and expedient." Successive amendments (*Pamph. L.* 1885, *p.* 203; *Pamph. L.* 1889, *p.* 224; *Pamph. L.* 1894, *p.* 432; *Gen. Stat., p.* 2471) have left the section unchanged in this respect. Section 4 provides that it shall be the duty of the commissioners, before they grant a branch or license to any person applying therefor, to call the applicant before them, and in the presence of one or more of the branch pilots of this state, who shall be personally notified to attend for the purpose, or, in case of the non-attendance of the pilot or pilots thus notified, then without the assistance or presence of a branch pilot, to examine the applicant or cause him to be examined, "touching his qualifications for such an employment, and in particular touching his knowledge of the tides, soundings, bearings and distances of the several shoals, rocks, bars and points of land in the navigation for which he applies for a branch or license to act as a pilot or deputy pilot." Section 6 authorizes the commissioners to take away the branch of any pilot or deputy pilot and to declare his license null and void whenever it shall appear to them that such pilot has willfully infringed or violated this act or the orders of the commissioners, or has negligently and carelessly lost any vessel under his care, or is laboring under a mental derangement so as to be incapable of attending to business, or is so addicted to the habits of intoxication as to be unfit to be entrusted with the charge of a vessel; such revocation of license, however, to be after notice and hearing.

By the supplement of 1898 it was enacted that no person shall be licensed as a pilot of this state, by way of Sandy Hook, except as therein provided, and that every person who shall have served two years as a deputy pilot shall be entitled to be examined and licensed as a full branch pilot if found qualified. In our opinion this supplement does not entitle the relator to be licensed as a full pilot upon any other terms than those prescribed by the original act, that is to say, the examination and qualifications here referred to are those mentioned in the act of 1846.

Upon the argument of the present demurrer counsel for the defendants raised certain preliminary objections to the *status* of the relator, in view of which it was insisted that he is not eligible as a candidate for examination or license as a full branch pilot. These preliminary objections have been considered, but we find it unnecessary to express an opinion thereon, because, assuming that the relator was eligible for license as a full branch pilot if found qualified by the commissioners, the facts set forth in the return show, as we conceive, that his candidacy has been fairly passed upon by them with a result adverse to the relator.

By reference to section 1 of the act of 1846 (above quoted) it clearly appears that the commissioners are clothed with a large discretion about admitting applicants to the pilotage service. It is, of course, not an arbitrary discretion. The relator, having fulfilled the condition of previous service as a deputy pilot, was entitled to have his candidacy fairly passed upon by the pilot commissioners. But in order that he should finally receive his license as full branch pilot he must fulfill two additional tests, viz.: first, an educational test, especially as to technical knowledge, to be determined by the commissioners after examining the applicant in the manner set forth in section 4 of the act of 1846; and secondly, a further test respecting his mental, moral and physical qualifications, to be determined by the commissioners after making "such inquiries respecting him and his qualifications as to them shall appear necessary and expedient."

The act prescribes different modes for the two lines of investigation. That which respects technical knowledge and experience is to be conducted by a personal examination of the applicant in a prescribed manner. The other line of investigation need not be conducted in his presence, nor with the formality required in judicial proceedings. It is not an inquiry or hearing, but *inquiries,* such as shall appear necessary and expedient. Section 6 of the act of 1846 entitles a man who is in possession of a license to a hearing, after notice, before he may be deprived of his license for delinquency; but for obvious reasons the discretion of the commissioners about granting license to a candidate therefor is not controlled by any requirement that judicial forms be observed in making inquiries respecting his qualifications aside from those that are educational. Questions of moral character, mental balance, habits of sobriety and the like are not easily determined by judicial investigation, and yet they concern the question of fitness for the responsible duties of a harbor pilot as closely as does the technical knowledge that a civil service examination is intended to disclose.

The statute requires that both tests shall be passed by the applicant before he shall be licensed; if he fail in either the other becomes at once immaterial. Although section 1 mentions the "examination" before mentioning the "inquiries," it is not essential that the one shall precede the other in point of time. A candidate, who does not satisfactorily pass the educational examination, has no right to compel the commissioners to pursue "other inquiries respecting him and his qualifications;" and so, on the other hand, if the commissioners have made the inquiries indicated and on the strength of the information thereby acquired have determined in their discretion that the applicant is not a fit person to be licensed, he has no right to require them to go through the empty form of an examination concerning his knowledge of tides, soundings, bearings and the like.

We think it fairly appears from the return made by the defendants that they have made "such inquiries respecting him

and his qualifications as to them appeared necessary and expedient" in accordance with the first section of the act of 1846. The language of the return is: "That said board investigated the general standing and character of the relator and from the evidence submitted concluded that it would be inexpedient to issue the license in question to the relator, even in case he had the requisite technical knowledge and could satisfactorily pass an examination." From this it appears that the discretion of the board has been fairly exercised to a sufficient extent to develop one insuperable obstacle to the issuance of a license to the relator. It is therefore of no consequence that he may possess full knowledge and entire fitness from a technical standpoint.

It would, of course, be an effective traverse of this return to prove that, as matter of fact, the commissioners have not actually and fairly conducted such inquiries respecting the qualifications of the relator as are contemplated by section 1 of the act of 1846. But if they have fairly exercised their discretion their findings are not to be overthrown in a collateral proceeding. Whether their discretionary findings are at all reviewable by the courts is a question that should be determined only on direct attack.

It results from the views above expressed that the demurrer to the defendants' return must be overruled. It appears from the arguments submitted that the relator at first traversed the return, and upon the trial of the traverse the issue was decided in favor of the defendants, and that the relator then withdrew his traverse in order to interpose this demurrer. For this reason leave to withdraw the demurrer and traverse the return will not be granted unless on special application to the court after notice to the defendants.